United States District Court
Southern District of Texas
**ENTERED**
May 12, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| EXXONMOBIL GLOBAL SERVICES COMPANY, ET AL., | § § § § | |
| Plaintiffs. | § § | |
| VS. | § § | CIVIL ACTION NO. 4:21-cv-03008 |
| BRAGG CRANE SERVICE, ET AL., | § § § | |
| Defendants. | § | |

## ORDER AND OPINION

Pending before me is Defendants' Rule 12(b)(3) Motion to Dismiss or Alternatively Motion to Transfer Venue Under 28 U.S.C. § 1404(a). Dkt. 33. Having reviewed the briefing, the record, and the applicable law, I **DENY** the motion.

## BACKGROUND

### A.  EXXONMOBIL'S ALLEGATIONS

On June 20, 2016, a crane owned and operated by Bragg Crane Service collapsed at an ExxonMobil[1] refinery in Torrance, California. The collapse reportedly occurred near a fluid catalytic cracking reactor and damaged ExxonMobil's equipment necessary to run the facility at full capacity. As a result of this incident, ExxonMobil alleges "that portions of the refinery [had to] be shut down for a period of time which resulted in lost profits, consequential damages, and special or indirect damages." Dkt. 1 at 9.

In this lawsuit, ExxonMobil has sued Bragg Crane Service and a number of its affiliates (collectively, "Bragg") for breach of contract and breach of warranty. ExxonMobil contends that Bragg performed its work at the Torrance Refinery under a Standard Procurement Agreement for Downstream or Chemical Services

---

[1] Plaintiff's Original Complaint refers to ExxonMobil Global Services Company, ExxonMobil Oil Corporation, and Exxon Mobil Corporation, collectively, as "ExxonMobil."

1

with Incidental Goods ("Standard Procurement Agreement"). The breach-of-contract section of Plaintiff's Original Complaint alleges, in pertinent part, as follows:

> 39. [The Standard Procurement Agreement] between ExxonMobil and Bragg requires Bragg to compensate ExxonMobil for the damage to ExxonMobil's property caused by Bragg, as well as to compensate ExxonMobil for its consequential, special and indirect damages and ExxonMobil's loss of anticipated profits which were caused by Bragg's negligence, negligence per se, gross negligence and/or willful misconduct. The [Standard Procurement] Agreement also provides that "Notwithstanding anything to the contrary . . . each party shall bear full responsibility, without limit, for its Gross Negligence or Willful Misconduct attributable to its managerial and senior supervisory personal [sic]."
>
> 40. Bragg has refused, in accordance with its obligation under the [Standard Procurement] Agreement, to pay for ExxonMobil's damages arising from this incident, which is a material breach of Bragg's contractual obligations.

Dkt. 1 at 11–12.

The breach-of-warranty portion of Plaintiff's Original Complaint provides in part:

> Pursuant to the [Standard Procurement] Agreement, Bragg warranted to perform its work "with due diligence and in a safe, workmanlike, and competent manner and in accordance with all provisions of the Order and applicable law." Bragg further warranted that its work would "be free from defect or deficiency for one year." The express warranties Bragg provided in the [Standard Procurement] Agreement were "in addition to any warranties otherwise provided by law."

*Id.* at 12.

### B. THE FORUM-SELECTION CLAUSES

The Standard Procurement Agreement consists of (1) Enabling Articles; (2) General Terms and Conditions; and (3) attached exhibits and addenda. Both the Enabling Articles and General Terms and Conditions contain forum-selection clauses.

The forum selection clause found in the Enabling Articles provides:

> The parties hereby agree to submit to the exclusive jurisdiction of the courts of Texas, including municipal, state and/or federal courts as appropriate, with respect to these Enabling Articles.

Dkt. 33-1 at 9. The forum-selection clause in the General Terms and Conditions states:

> [ExxonMobil] and [Bragg] hereby agree to submit to the exclusive jurisdiction of the courts of the following states, including municipal, state and/or federal courts as appropriate: (i) Louisiana, when Louisiana law governs an Order, or (ii) Texas, for an Order not governed by Louisiana law.

*Id.* at 13. An "Order" is defined as a request made by ExxonMobil or an affiliate for Bragg to complete services. *See id.* at 9. The Standard Procurement Agreement specifies that "[a]n Order may take the form of an oral request by" ExxonMobil. *Id.* at 10.

Because the forum-selection clauses require, in essence, that all disputes between the parties relating to the Standard Procurement Agreement be litigated in the state or federal courts of Texas (so long as Louisiana law does not govern an Order), ExxonMobil contends that venue is proper here in the Southern District of Texas.

C. **BRAGG'S POSITION**

Bragg concedes that it had a 2010 agreement (i.e., the Standard Procurement Agreement) with ExxonMobil that covered crane leasing by ExxonMobil entities for the Torrance Refinery. Bragg also acknowledges that the Standard Procurement Agreement contains forum-selection clauses calling for the exclusive jurisdiction of courts in the State of Texas for purchase orders coming directly from ExxonMobil or its affiliates.

However, Bragg's position is that the Standard Procurement Agreement and its forum-selection clauses do not cover the crane rental in this case because BHL

3

Industries, Inc. ("BHL"), an independently contracted demolition company, not ExxonMobil, ordered the crane involved in the June 2016 accident from Bragg.

According to Bragg, Torrance Refining Company LLC, an ExxonMobil affiliate, hired BHL to demolish a catalytic reactor at the Torrance Refinery. BHL reportedly then reached out to Bragg directly to lease a crane for the project. The BHL-Bragg lease contains no forum-selection clause.

"The claims in this case," Bragg stresses, "emanate from a June 2016 incident that only involved the BHL[-Bragg] lease and BHL's demolition of a catalytic reactor. [Bragg did not] enter[] a contract with any [ExxonMobil entity] regarding the BHL demolition." Dkt. 33 at 3 (citation omitted).

Because Bragg has its principal place of business in the Central District of California and all events giving rise to ExxonMobil's claims occurred in the Central District of California, Bragg urges me to dismiss this case for improper venue or, at the very least, transfer the case to the Central District of California for convenience purposes.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3). "Once a defendant files a Rule 12(b)(3) motion challenging venue, the burden of sustaining venue lies with the plaintiff." *Fernandez v. Soberon*, No. CIV.A. H-13-0325, 2013 WL 2483345, at *2 (S.D. Tex. June 10, 2013). In resolving a Rule 12(b)(3) motion, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (quotation omitted). Importantly, the court must accept as true all the allegations in the complaint and resolve all factual conflicts in favor of the plaintiff. *See AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*, 878 F. Supp. 2d 779, 788 (S.D. Tex. 2012).

4

# DISCUSSION

A. **THE ALLEGATIONS MADE IN THIS LAWSUIT ARE COVERED BY A FORUM-SELECTION CLAUSE**

In deciding whether to enforce a forum-selection clause, I "must first determine whether the clause applies to the type of claims asserted in the lawsuit." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 616 (5th Cir. 2007) (quotation omitted). As part of this inquiry, I "look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clauses." *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998). "If the substance of the plaintiff's claims, stripped of their labels, does not fall within the scope of the forum selection clause, the clause cannot apply." *TGI Friday's, Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 750, 759 (N.D. Tex. 2009) (quotation omitted).

Turning to the instant case, ExxonMobil brings causes of action against Bragg for breach of contract and breach of warranty under the Standard Procurement Agreement. Given these allegations, ExxonMobil claims that the Standard Procurement Agreement's forum-selection clauses require any lawsuit brought under the agreement to be maintained in federal or state courts in Texas. Challenging venue, Bragg contends that the Standard Procurement Agreement's forum-selection clauses do not apply to the claims brought by ExxonMobil because Bragg did not enter into a contract with ExxonMobil for the lease of a crane for BHL's demolition of a catalytic reactor. Bragg might ultimately be right that ExxonMobil has no cause of action under the Standard Procurement Agreement for breach of contract or breach of warranty, but that is a summary-judgment issue, not a venue concern. ExxonMobil's entire case theory is based on its contention that the crane Bragg provided at the Torrance Refinery falls under the auspices of the Standard Procurement Agreement. Stated differently, ExxonMobil contends that an Order, as that term is defined under the Standard Procurement Agreement,

exists and that allegation alone demands the forum-selection clauses be applied to the present dispute. I agree with ExxonMobil.

As part of the venue analysis, Bragg asks me to determine that ExxonMobil has no valid claim under the Standard Procurement Agreement for breach of contract or breach of warranty related to the incident at the Torrance Refinery. But that is putting the proverbial cart before the horse. In determining the applicability of a forum-selection clause, my inquiry needs to go no "further than determining whether the allegations made fall under the wording of the [forum-selection] clause. Examination of the merits of any of the claims or defenses need not be made." *Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 850 (8th Cir. 1986), *abrogated on other grounds by Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989). A forum-selection clause "establishes a legal right which is analytically distinct from the rights being asserted in the dispute to which it is addressed." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 195 (3d Cir. 1983). At this juncture, my job is simply to determine if the allegations set forth in ExxonMobil's Original Complaint fall within the ambit of the forum-selection clauses. They clearly do. At some future date, I expect Bragg will move for summary judgment on ExxonMobil's claims for breach of contract and breach of warranty under the Standard Procurement Agreement. At that time, I will be able to assess the validity of ExxonMobil's breach-of-contract and breach-of-warranty claims. But today is not the time to address the underlying merits of the lawsuit.

**B.    THE FORUM-SELECTION CLAUSES AT ISSUE ARE ENFORCEABLE**

Having concluded that the forum-selection clauses cover the instant dispute, I must now determine whether the forum-selection clauses are enforceable.

Generally speaking, forum-selection clauses are afforded great deference. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (emphasizing that a forum-selection clause will determine venue in "all but the most exceptional cases" (quotation omitted)). That is because judges fully

respect the parties' decision to choose the locale where litigation should proceed. In clear and unmistakable language, the highest court in the land has emphasized that forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Following this precedent, the Fifth Circuit "applies a strong presumption in favor of the enforcement of mandatory [forum-selection clauses]." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 773 (5th Cir. 2016). The "party resisting enforcement of a forum selection clause bears a heavy burden of proof." *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1074 (5th Cir. 2020) (quotation omitted).

Bragg argues that the forum-selection clauses at issue should be declared unenforceable because forcing the company to litigate in Texas presents an undue hardship. Says Bragg: "[D]efending an action in the Southern District of Texas presents a grave inconvenience for a California company [Bragg] facing worldwide conglomerates [ExxonMobil] with their principal offices in the Southern District of Texas." Dkt. 33 at 9. Although I have no doubt that it would be much more convenient for Bragg to defend this lawsuit in its own backyard (the Central District of California), Bragg voluntarily entered a contractual agreement containing clear and unequivocal forum-selection clauses, which selected the State of Texas as the locale for legal proceedings arising under the Standard Procurement Agreement. "By entering into an agreement with a forum-selection clause, the parties effectively represent to each other that the agreed forum is not so inconvenient that enforcing the clause will deprive either party of its day in court, whether for cost or other reasons." *In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010) (cleaned up). *See also Atl. Marine*, 571 U.S. at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."). The United States Supreme Court has held that a party seeking to escape enforcement of a forum-selection clause must show that trial in

the contractually agreed forum "will be *so gravely difficult and inconvenient* that he will for all practical purposes be *deprived of his day in court.*" *M/S Bremen*, 407 U.S. at 18 (emphasis added). "Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *Id*. In this case, Bragg has not met the heavy burden of showing that proceeding with litigation in the State of Texas constitutes a grave difficulty that, for all practical purposes, will deprive it of its day in court. *See Moates v. Facebook Inc.*, No. 4:20-cv-896-ALM-KPJ, 2021 WL 3013371, at *5 (E.D. Tex. May 14, 2021) (a party seeking to invalidate a forum-selection clause "must show it is impossible for the party to try the case, and litigating in another forum will require the party to abandon his claims"); *Stellar Restoration Servs., LLC v. James Christopher Courtney*, 533 F. Supp. 3d 394, 418 (E.D. Tex. 2021) ("The inconvenience a party experiences from attending proceedings and trials in another state will not prevent enforcement of a forum selection clause."); *Pugh v. Arrow Elecs., Inc.*, 304 F. Supp. 2d 890, 895 (N.D. Tex. 2003) ("[I]f additional costs or inconveniences are to present a barrier to enforcement of a forum-selection clause, they must be so grave that they create a situation where the plaintiff will for all practical purposes be deprived of his day in court." (quotation omitted)). The Standard Procurement Agreement's forum-selection clauses are thus enforceable.

## C. BRAGG HAS NOT MET ITS BURDEN TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

Lastly, Bragg argues that even if a forum-selection clauses identify the Southern District of Texas as the exclusive locale for this dispute, this case should still be transferred to the Central District of California under 28 U.S.C. § 1404(a). Section 1404(a) permits a district court to transfer an action to any other district "where it might have been brought," so long as the transfer is "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). Traditionally, a district court considering a motion to transfer under § 1404 evaluates private and public interest factors, but "a court evaluating a

defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Atl. Marine*, 571 U.S. at 64. The "public interest factors" a district court can consider include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). It should come as no surprise that a forum-selection clause selecting an exclusive forum is given "significant weight" in the transfer analysis based upon the assumption that it "represents the parties' agreement as to the most proper forum." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988). As a result, the party resisting a forum-selection clause will prevail only if the public interest factors overwhelmingly are in its favor.

The focus of the first factor—the administrative difficulties flowing from court congestion—is "not whether transfer will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Hillestad v. LLOG Expl. Co.*, No. 3:17-CV-00341, 2018 WL 4938708, at *7 (S.D. Tex. Sept. 20, 2018) (cleaned up). Bragg argues that fiscal year figures for case disposition through March 31, 2021 indicate that median time for a civil case to progress through trial in the Central District of California is 17.4 months. I assure the parties that I will set a speedier trial date than that unless, of course, the parties request I do otherwise. This should alleviate any concern that the Central District of California will provide a speedier resolution.

The second factor—the local interest in having localized controversies decided at home—is neutral because both Texas and California have an equal interest in resolving this controversy. Bragg's principal place of business is in California, and ExxonMobil's principal place of business is in Texas. *See Perez v. LinkedIn Corp.*, No. 4:20-CV-2188, 2020 WL 5997196, at *5 (S.D. Tex. Oct. 9, 2020) (finding this factor neutral where defendant was headquartered in the

9

Northern District of California and plaintiff was a resident of the Southern District of Texas).

The third factor—the interest in having the trial of a diversity case in a forum that is at home with the law—heavily leans toward Texas because the Standard Procurement Agreement's choice-of-law clause unquestionably states that Texas law governs in this instance.

The fourth and final public interest factor—the avoidance of unnecessary problems of conflict of laws of the application of foreign law—is neutral because no foreign law is applicable to the dispute.

All told, three public interest factors weigh against transfer, while one factor is neutral. Because Bragg has not established that this is an extraordinary case in which the public interest factors override the Standard Procurement Agreement's valid forum-selection clauses, this case should remain right here in the Southern District of Texas.

## CONCLUSION

For the reasons discussed above, Defendants' Rule 12(b)(3) Motion to Dismiss or Alternatively Motion to Transfer Venue Under 28 U.S.C. § 1404(a) (Dkt. 33) is **DENIED**.

SIGNED this 12th day of May 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE