United States District Court
Southern District of Texas
**ENTERED**
September 25, 2023
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| EXXONMOBIL GLOBAL SERVICES COMPANY, *et al.*, | § § § | |
| Plaintiffs. | § § | |
| V. | § § | CIVIL ACTION NO. 4:21-cv-03008 |
| BRAGG CRANE SERVICE, *et al.*, | § § § | |
| Defendants. | § | |

### ORDER AND OPINION

This case arises from a June 20, 2016 crane collapse that occurred at an ExxonMobil[1] refinery in Torrance, California. As a result of the incident, ExxonMobil alleges that portions of the refinery had to be shut down, resulting in lost profits and other alleged damages. ExxonMobil has sued Bragg Crane Service and a number of its affiliates (collectively, "Bragg") for breach of contract and breach of warranty. In short, ExxonMobil contends that Bragg is responsible for the crane collapse and the damages that followed.

We are a week before trial, and there are six pending motions to exclude testimony of expert witnesses: (1) Plaintiffs' Motion in Limine and Motion to Exclude the Testimony of Defendants' Expert Witness Jim Wiethorn (Dkt. 97); (2) Plaintiffs' Motion in Limine and Motion to Exclude Certain Testimony of Defendants' Expert Witness Jesse D. Frederick (Dkt. 99); (3) Defendants' Motion in Limine to Exclude or Limit the Testimony of Plaintiffs' Expert Gary Devenish (Dkt. 100); (4) Defendants' Motion in Limine to Exclude or Limit Testimony of Plaintiffs' Expert Clifton Moore (Dkt. 102); (5) Defendants' Motion in Limine to

---

[1] In this Order and Opinion, the Plaintiffs—ExxonMobil Global Services Company, ExxonMobil Oil Corporation, and Exxon Mobil Corporation—are collectively referred to as "ExxonMobil."

Exclude or Limit the Testimony of Plaintiffs' Expert Ted Blanton Sr. (Dkt. 103); and (6) Plaintiffs' Motion in Limine and to Exclude the Testimony of Defendants' Expert Witness Ronald Vollmar (Dkt. 112). My rulings on the various motions to exclude testimony are provided below.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Expert testimony will be allowed if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

The United States Supreme Court has explained that district courts act as gatekeepers in making determinations as to the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In performing this gatekeeping function, a trial judge must first determine whether the witness qualifies as an expert "by virtue of his knowledge, skill, experience, training, or education." *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quotation omitted). If the expert is qualified, the "overarching concern" becomes "whether the testimony is relevant and reliable." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). To be reliable, expert testimony must "be grounded in the methods and procedures of science and be more than unsupported speculation or subjective belief." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (cleaned up). To be relevant, the expert's "reasoning or methodology [must] be properly applied to the facts in issue." *Id.* (quotation omitted).

I possess broad discretion in deciding whether to admit expert testimony. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–42 (1997). "As a general rule,

questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *Puga*, 922 F.3d at 294. A district court's role under Rule 702 "is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role—the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Id.* As the Supreme Court explained: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "While the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *Puga*, 922 F.3d at 294 (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendment). Put another way, my "role as gatekeeper under *Daubert* is not intended to serve as a replacement for the adversary system." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (cleaned up).

With this legal framework in mind, I turn to the pending motions to exclude expert testimony.

## DISCUSSION

### A.   JIM WIETHORN

Jim Wiethorn ("Wiethorn") has been designated by Bragg to

> provide opinions on the standards for operation of mobile cranes, the responsibilities of the persons involved in the incident as relates to the use of a crane, and the position of the collapsed crane boom in relation to the refinery equipment, and visible property damage from his inspection of the accident scene.

Dkt. 109-1 at 3. Wiethorn is a licensed professional engineer in 35 states who has extensive experience in conducting crane accident analysis.

ExxonMobil insists that Wiethorn should not be permitted to testify as an expert "because he failed to consider sufficient facts and data and bases his opinions on unsupported and incorrect assumptions." Dkt. 97 at 6. In making this

argument, ExxonMobil notes that Wiethorn sent an email to colleagues stating that his report in this matter is "one of the worst reports [he has] ever issued." Dkt. 97-3 at 2.

While that admission will certainly be fertile ground for cross-examination, I am unwilling to issue a blanket order prohibiting Wiethorn from testifying at trial. He is the only expert to have inspected the accident site and the crane the day after the accident. Although ExxonMobil criticizes Wiethorn for not reviewing enough relevant information related to the crane collapse, he says he reviewed voluminous records concerning the relationships between the parties, various depositions, and the operations manual for the crane. Based on the information Wiethorn reviewed, Bragg maintains that he possesses sufficient information to render an expert opinion in this case. "[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility*." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quotation omitted). For that reason, any "perceived flaws in [Wiethorn's testimony] are matters properly to be tested in the crucible of adversarial proceedings." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty.*, 80 F.3d 1074, 1079 (5th Cir. 1996).

ExxonMobil also objects to Wiethorn offering certain opinions that he did not disclose in his expert report. These opinions relate to causation, contracts, payment structures, and general contracting. Federal Rule of Civil Procedure 26 requires that expert reports disclose "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i). "The entire purpose of Rule 26 is to inform the opposing side of each expert's opinion and the basis of that opinion." *Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC*, No. 4:19-CV-03113, 2021 WL 5991744, at *2 (S.D. Tex. Dec. 16, 2021). It should come as no surprise to the experienced lawyers involved in this case that Wiethorn will be limited at trial to testifying only as to

those opinions set forth in his expert report. "Putative testimony purporting to discuss topics not addressed in the reports will not be admitted at trial." *Id.*

## B.   JESSE FREDERICK

Bragg has identified Jesse Frederick ("Frederick") as an expert witness who will testify at trial. Frederick's expert report identifies four opinions: (1) ExxonMobil has provided insufficient information as to the root cause and cost of repairs associated with damage due to the crane collapse; (2) ExxonMobil altered the demolition plan to accommodate the Sale Purchase Agreement; (3) Bragg was tasked with an ill-planned lift; and (4) Non-associated equipment repairs appear to be imbedded in the overall post crane accident repairs.

ExxonMobil does not seek to exclude Frederick's testimony in its entirety. Rather, ExxonMobil asks me to exclude testimony Frederick may offer on three issues: (1) a 2015 explosion at the Torrance refinery; (2) whether ExxonMobil should have conducted a "root cause analysis"; and (3) whether BHL Industries, Inc., ("BHL") was the general or prime contractor. I will address each issue separately.

### 1.   The 2015 Explosion

In 2015, roughly 15 months before the crane accident giving rise to this lawsuit, an explosion occurred at the Torrance refinery in a pollution control device called the Electrostatic Precipitator ("ESP"). At trial, Frederick apparently wants to suggest that the ESP explosion, not the crane accident, is the cause of some of the damage to the boilers that ExxonMobil seeks to recoup in this matter. ExxonMobil argues that Frederick's opinions about this ESP explosion are "irrelevant, unsupported, and overly prejudicial." Dkt. 99 at 4. I agree with ExxonMobil. The record is notably lacking *any* evidence that remotely suggests that the ESP explosion caused damage to the refinery for which ExxonMobil seeks to recover in this action. At his deposition, Frederick admitted that he "absolutely" does not know whether the ESP explosion had any impact on the equipment ExxonMobil contends was damaged as a result of the crane accident. Dkt. 99-2 at

10. He further acknowledged that he could not "say one way or another whether the boiler tubes were damaged by the ESP event in 2015 or the crane collapse in 2016." *Id.* at 11. As such, any testimony from Frederick concerning the ESP explosion is "irrelevant and unreliable expert testimony," which I am required to exclude as part of my gatekeeper function. *Puga*, 922 F.3d at 294. Frederick may not testify about the ESP explosion.

### 2. Root Cause Analysis

ExxonMobil next argues that Frederick should not be permitted to testify as to whether a "root cause analysis" should have been conducted. A "root cause analysis" is a systematic approach for identifying the cause of an event, with the goal of preventing the event from reoccurring in the future. In ExxonMobil's telling, Frederick's opinion that a "root cause analysis" should have been performed "suggest[s] that ExxonMobil was somehow at fault for failing to conduct one." Dkt. 99 at 7. ExxonMobil also argues that testimony about a "root cause analysis" is irrelevant to any issue in the case. I am not convinced.

Under Rule 702, I may not "weigh the expert testimony to the point of supplanting the jury's fact-finding role—the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Puga*, 922 F.3d at 294. I see nothing improper or prejudicial with Frederick testifying that, in his view, ExxonMobil has provided insufficient information as to the root cause and cost of repairs for the crane collapse. The testimony is relevant because it goes to the heart of the causation analysis—that is, whether ExxonMobil's alleged damages are "the natural, probable, and foreseeable consequence of [Bragg's] conduct." *IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs.*, 900 F.3d 640, 652 (5th Cir. 2018) (quotation omitted). Because the jury is capable of weighing the importance of this information, Frederick may testify that a "root cause analysis" would be helpful to identifying the true nature of ExxonMobil's alleged damages.

### 3. BHL As General or Prime Contractor

Finally, ExxonMobil argues that Frederick should not be allowed to offer his opinion that BHL was the general or prime contractor. At deposition, Frederick testified that it appeared to him that BHL was a prime contractor while Bragg was a subordinate.

A witness may offer expert opinion only if "the testimony is based on sufficient facts or data." FED. R. EVID. 702(b). "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Mats., Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). "[I]n upholding its duty as a gatekeeper, the court must consider whether the expert relied on insufficient or incorrect facts to form his opinion." *Grant v. CRST Expedited, Inc.*, No. 1:18-CV-433, 2021 WL 1151560, at *11 (E.D. Tex. Jan. 28, 2021).

Based on the record before me, Frederick has no factual basis to testify that BHL was the general or prime contractor. To start, Frederick admits that he is not an expert on standard procurement agreements in a refinery. Even if I overlook that admission, Frederick acknowledges that he has not seen any contract upon which he could base his opinion that BHL was the prime contractor. When pressed at deposition, Frederick was forced to admit that he was merely assuming that BHL was the general contractor. This is far from sufficient to meet Rule 702's expert requirements. Any testimony from Frederick concerning BHL acting as a general or prime contractor is nothing more than rank speculation. It will not be allowed.

### C. GARY DEVENISH

ExxonMobil has identified Gary Devenish ("Devenish") as an expert on the economic damages incurred by ExxonMobil as a result of the June 20, 2016 crane incident. In summary, Devenish opines that ExxonMobil incurred roughly $6.3 million in lost profit and repair costs due to the incident.

Bragg asks me to exclude or limit Devenish's testimony, arguing that Rule 702 prohibits Devenish from testifying about (1) prejudgment interest; (2) crane repairs; (3) lost profits; and (4) equipment repairs.

As far as prejudgment interest is concerned, Bragg argues that Devenish "gave no consideration to the terms in the tolling agreements" between the parties; "could not articulate how he came up with the interest accrual date of July 1, 2016"; "gave no consideration to the fact that a judgment has not been entered in the case"; and "failed to recognize that prejudgment interest is a calculation performed by the Court, not the jury, after a verdict is reached and a damages judgment, if any, is determined by the Court." Dkt. 100 at 5. In response, ExxonMobil correctly notes that prejudgment interest is a matter for district court to calculate *after* the jury renders a verdict. *See Int'l Turbine Servs., Inc., v. VASP Brazilian Airlines*, 278 F.3d 494, 500 (5th Cir. 2002). As such, there is no need for Devenish to offer any prejudgment interest calculations at trial.

Bragg next suggests that Devenish is not qualified to calculate refinery lost profits because he "lacks accounting experience" and is not a certified public accountant ("CPA"). Dkt. 150 at 2. This argument does not sway me. As ExxonMobil accurately notes:

> There is, of course, no requirement that an expert must possess a certain type of degree to calculate lost profits. Further, a CPA would not know where to begin in calculating lost profits without an understanding of Refinery operations and yields, an area in which Mr. Devenish's expertise is unquestioned. Defendants' argument also ignores that Mr. Devenish is qualified by direct industry experience in refinery economics and his experience as a consultant, having conducted hundreds of lost opportunity and economic loss calculations specifically for refineries, as well as by his education, having obtained an MBA from the University of Texas at Austin.

Dkt. 122 at 13–14.

Bragg next argues that Devenish lacks sufficient facts or data to support his testimony concerning crane repairs, lost profits, and equipment repairs. Along these lines, Bragg also asserts that Devenish failed to use and apply reliable principles and methods as part of his analysis. Among the documents Bragg contends Devenish should have considered: service invoices, time sheets, data on product yields, inventory and pricing, pressure tests, chemical analysis, or

metering data. ExxonMobil retorts that Devenish's testimony is supported "with actual refin[ery] vetted material balance data"; "vetted with an external published source sufficient to arrive at his opinions to a reasonable degree of certainty"; and based on "actual operating data that was vetted and verified by a third-party source." *Id.* at 6–7 (quotations omitted). ExxonMobil also claims that Devenish's calculations of lost profits are based on reliable data.

After considering the arguments made by both sides, I conclude that any questions as to the weight to be given to Devenish's testimony are best left for the jury to decide. Bragg's concerns with Devenish's principles and methods may be contested in "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

## D.   CLIFTON MOORE

Clifton Moore ("Moore") is a Senior Consultant at Baker & O'Brien, an engineering consulting firm. He has more than 30 years of experience in the petrochemical and nuclear industries. ExxonMobil has designated Moore as an expert witness. His expert report indicates that he plans to offer five opinions at trial: (1) Bragg acted in a manner consistent with the Standard Procurement Agreement for Downstream or Chemical Services with Incidental Goods ("Standard Procurement Agreement") in place between ExxonMobil and Bragg; (2) ExxonMobil and BHL expected that Bragg was working in accordance with the Standard Procurement Agreement at the time of the crane collapse; (3) the work Bragg performed at the time of the crane collapse was requested by ExxonMobil; (4) Bragg's services and actions were consistent with industry practice of a preferred supplier and made Bragg an integral part of the refinery operation; and (5) there is no evidence of a written agreement between Bragg and BHL.

Bragg seeks to exclude Moore from testifying on the basis that he is unqualified to opine on contract formation and interpretation. Bragg points to Moore's lack of legal training and contends that Moore cannot identify elements of a legally enforceable contract between ExxonMobil and Bragg. In response,

ExxonMobil persuasively explains that Moore has not been designated as a legal expert to talk about contract formation. Instead, ExxonMobil notes that Moore has been retained to opine on "[a]ctions and behaviors of involved parties in comparison to industry practices and standard procurement agreements." Dkt. 119-1 at 5. This testimony, ExxonMobil argues, "add[s] vital context to the circumstances around the parties['] actions on and leading up to the day of the crane incident." Dkt. 119 at 8.

Bragg's motion to exclude Moore's testimony mischaracterizes Moore's purpose as an expert witness and the testimony itself. Moore's testimony is intended to shed light upon industry practices, not upon the fundamentals of contract formation as defined by the law. As already noted, "[q]uestions relating to the bases and sources of an expert's opinions affecting the weight to be assigned that opinion rather than its admissibility should be left for the jury's consideration." *Smith v. Starr Indem. & Liab. Co.*, 807 F. App'x 299, 302 (5th Cir. 2020). Bragg's complaints about Moore's testimony do not rise to the level of Rule 702 and *Daubert* violations, and any such concerns may be brought to the jury for evaluation. Moore's expert testimony will be allowed.

## E.    TED BLANTON SR.

Bragg seeks to preclude ExxonMobil expert Ted Blanton Sr. ("Blanton") from testifying about whether Bragg's conduct surrounding the crane collapse failed to meet the industry standard of care. Bragg asserts that Blanton is unqualified to testify about crane operations because his "educational background is suspect and highly questionable at best." Dkt. 103 at 5. In particular, Bragg contends that Blanton's alma mater, Suffield University, is an unaccredited "diploma mill entity" and, as a result, his bachelor's and master's degrees from Suffield should be entirely discounted. *Id.* at 4. Bragg also takes issue with the fact that Blanton "has no valid certification for the operation of a lattice boom crane." *Id.* at 5.

In support of Blanton's qualifications to testify as an expert in this case, ExxonMobil touts Blanton's five-decade career in the crane industry, during which he "investigated numerous crane incidents, personally trained operators, inspectors and maintenance personnel on the use of cranes, and developed and implemented crane specific mechanisms to ensure the safe operation of cranes." Dkt. 124 at 2. ExxonMobil also notes that Blanton holds relevant crane-related certifications, participates in leadership roles in professional organizations, has published manuals and articles on crane operations, and has testified as an expert on crane operations in a number of cases.

The Fifth Circuit has ruled that a trial court must not "exclude expert witness testimony on the ground that the witness is not qualified to render the opinion at issue because the witness lacks a certain educational . . . background." *United States v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 2013) (quotation omitted). "As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function. After that, qualifications become an issue for the trier of fact rather than the court in its gate-keeping capacity." *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999). Given this legal standard, I find that Blanton is qualified to testify as an expert witness at trial on crane operations. His decades of experience in the crane industry, alongside his work in professional organizations, publications, past expert testimony, and educational background, are sufficient to meet the standards previously described.

## F.   RONALD VOLLMAR

Last but not least, ExxonMobil argues that I should not allow Bragg expert Ronald Vollmar ("Vollmar") to testify at trial. Vollmar is a CPA who, according to his resume, "specializes in serving the oil and gas, retail, financial services, and manufacturing sectors of the economy." Dkt. 130-1 at 3. His experience "includes the management of a wide variety of litigation, bankruptcy, valuation, audit, and internal control review engagements." *Id*. In his expert report, Vollmar states that

he was asked to evaluate Devenish's expert report regarding ExxonMobil's damages.

ExxonMobil contends that Vollmar lacks experience in the workings and valuations of refineries, misunderstands a key component of Devenish's lost profits calculation, and misinterprets information concerning lost production and sales, as well as ExxonMobil's costs of crane removal and recovery. Unsurprisingly, Bragg vehemently disagrees, claiming that Vollmar is supremely qualified as an expert on the issues in question.

Cutting to the chase, I find Vollmar is qualified to testify as an expert regarding his complaints with Devenish's damage calculations and methodology. My decision is based, in large part, on the Fifth Circuit's guidance that district courts should not transform a motion to exclude an expert into a trial on the merits. *See Pipitone*, 288 F.3d at 250. This is because the factfinder—in this case, a jury— is entitled to accept or reject an expert's testimony *including* by judging whether the predicate facts on which an expert relied are accurate. *See id.* "[A]n expert need not have specialized experience in a particular industry to be qualified to testify on the issue of damages." *Amigo Broad., L.P. v. Spanish Broad. Sys., Inc.*, No. A-05-CA-193, 2006 WL 5503872, at *3 (W.D. Tex. Apr. 21, 2006). As a general rule, cross-examination and presentation of competing evidence are traditionally sufficient to challenge an expert opinion, rather than exclusion for inadmissibility. *See MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 852 (5th Cir. 2015). "It is the role of the adversarial system, not the court, to highlight weak evidence." *Primrose Operating Co.*, 382 F.3d at 562. Accordingly, Vollmar's expert view of Devenish's conclusions are, at a bare minimum, fit for the jury's consideration.

## CONCLUSION

The motion to exclude the testimony of Wiethorn is **GRANTED** in part and **DENIED** in part. Wiethorn may testify only as to those opinions set forth in his expert report.

The motions to exclude the expert testimony of Devenish, Moore, Blanton, and Vollmar are **DENIED**.

The motion to exclude the testimony of Frederick is **GRANTED** in part and **DENIED** in part. Frederick may testify as to whether a root cause analysis was performed. He may not testify as to the ESP explosion or as to whether BHL was a prime or general contractor.

SIGNED this 25th day of September 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE