United States District Court
Southern District of Texas
**ENTERED**
September 26, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| EXXONMOBIL GLOBAL SERVICES COMPANY, *et al.*, | § § § § | |
| Plaintiffs. | § § | |
| V. | § § § | CIVIL ACTION NO. 4:21-cv-03008 |
| BRAGG CRANE SERVICE, *et al.*, | § § § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before me are five evidentiary motions filed by ExxonMobil:[1] (1) Plaintiffs' Motion to Exclude Testimony on Defendants' Affirmative Defenses (Dkt. 107); (2) Plaintiffs' Motion in Limine and Motion to Exclude Matters Relating to Comparative Fault (Dkt. 110); (3) Plaintiffs' Motion for Ruling on Admissibility of Insurance at Trial (Dkt. 118); (4) Plaintiffs' Motions [sic] in Limine on the 2015 ESP Explosion (Dkt. 127); and (5) Plaintiffs' Motions [sic] in Limine on Any Testimony from BHL or Defendants from the CAL OSHA Proceedings (Dkt. 134).

Let me emphasize that my motion in limine rulings are simply preliminary evidentiary decisions. It is well-settled that motion in limine rulings "are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). At trial, a party seeking to introduce evidence prohibited by my motion in limine rulings must approach the bench and seek leave of court prior to offering the disputed evidence.

---

[1] Plaintiffs ExxonMobil Global Services Company, ExxonMobil Oil Corporation, and Exxon Mobil Corporation are collectively referred to as "ExxonMobil." Defendants include Bragg Crane Service and a number of its affiliates. Collectively, I will refer to the Defendants as "Bragg."

A.  **PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY ON DEFENDANTS' AFFIRMATIVE DEFENSES**

Plaintiffs' Motion to Exclude Testimony on Defendants' Affirmative Defenses is rooted in Federal Rule of Civil Procedure 30(b)(6). That rule provides that when a corporation is named as a deponent, the corporation "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." FED. R. CIV. P. 30(b)(6).

> Rule 30(b)(6) is designed to avoid the possibility that several officers and managing agents might be deposed in turn, with each disclaiming personal knowledge of facts that are clearly known to persons within the organization and thus to the organization itself. Therefore, the deponent must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the party noticing the deposition and to *prepare* those persons in order that they can answer fully, completely, unevasively, the questions posed as to the relevant subject matters. The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved.

*Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432–33 (5th Cir. 2006) (cleaned up). The Fifth Circuit has warned:

> When a corporation . . . designates a person to testify on its behalf, the corporation appears vicariously through that agent. If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.

*Resol. Tr. Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993).

A district court may issue a number of sanctions against a party that fails to comply with Rule 30(b)(6). *See* FED. R. CIV. P. 37(b)(2)(A). The sanction that ExxonMobil seeks against Bragg would have me "prohibit[] [Bragg] from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." FED. R. CIV. P. 37(b)(2)(A)(ii). "Federal courts have interpreted Rule 30(b)(6) as prohibiting a 30(b)(6) representative from

disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject." *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, No. 4:11-cv-1355, 2016 WL 7157522, at *3 (S.D. Tex. Dec. 7, 2016) (cleaned up).

ExxonMobil gave notice to Bragg that it would depose a designated corporate representative under Rule 30(b)(6). The notice included a list of 46 subjects that a Bragg representative was required to knowledgably discuss. Two of those subjects were "[t]he claims and defenses of Bragg in this lawsuit" and the "[f]actual bases for all claims and defenses in this lawsuit." Dkt. 107-1 at 6.[2] In response, Bragg designated two people—Kevin Ebel ("Ebel") and Mike Roy ("Roy")—to speak on both subjects.

At his deposition, Ebel testified that he had no idea what topics he had been designated to speak on, did not understand that his testimony as a corporate representative was binding on Bragg, had never reviewed the corporate representative notice, and did absolutely nothing to prepare to testify as a corporate representative on the topics for which he had been designated. Similarly, Roy testified that he did not know that he had been designated as a corporate representative. ExxonMobil correctly notes that neither Roy nor Ebel could "identify a single fact relating to or in support of any of the affirmative defenses pled by Defendants." Dkt. 107 at 6. Take Ebel's deposition testimony as an example:

> Q. Will you tell me, on behalf of the Bragg companies, the factual bases -- all factual bases -- for the assertions that the statute of limitations applies?
>
> A. I don't believe I understand your question. Do you want me to regurgitate what it says here?

---

[2] Bragg has pled six affirmative defenses: (1) the statute of limitations; (2) failure to perform conditions precedent—proper presentment; (3) Plaintiffs' lack of standing; (4) lack of consideration; (5) the statute of frauds; and (6) Plaintiffs' failure to mitigate damages. *See* Dkt. 45 at 5–6.

3

> Q. No. I want to know the factual bases supporting that allegation by Bragg.
>
> A. I don't know what it is.
>
> Q. Let's go to the next one, the next page, paragraph 54, "Failure to perform conditions precedent - proper presentment." Will you provide for me, as the representative for Bragg, all the factual bases for this allegation?
>
> A. I don't know what that means.
>
> \* \* \*
>
> Q. Let's go to paragraph 55 [of Bragg's Answer], "Plaintiffs' lack standing to bring their asserted claims." Will you provide for -- as the corporate representative for the Bragg companies, will you provide all the factual bases for this assertion?
>
> A. I don't know what that is.
>
> \* \* \*
>
> Q. And sitting here today as the corporate representative for Bragg, you cannot tell us any of the facts that support any of these alleged affirmative defenses identified in paragraphs 53, 54, 55, 56, 57, and 58, can you?
>
> A. Again, I don't know what -- when you say "the facts," the way that these are -- the wording here, I don't know what the facts would be.
>
> Q. Because you don't understand the affirmative defenses, do you?
>
> A. I don't understand the language used here. Is there like a decoder ring I get or something?

Dkt. 107-3 at 5–8. Roy's testimony is equally unhelpful. A small sampling:

> Q. Will you, on behalf of Bragg, tell us all the factual bases that Bragg relies upon for this item number, the statute of limitations?
>
> A. I don't know the particulars of statute of limitations or anything else. I'm not aware of it. I could research it, but I don't know about it.
>
> Q. But sitting here today, do you know of any of the facts upon which Bragg is replying [sic] upon to assert the statute of limitations?
>
> A. I don't.
>
> \* \* \*
>
> Q. And then paragraph 57, it says, "Statute of frauds." Are you aware of any facts that relate to this defense?

> A. No.
>
> Q. And then paragraph 58 says "Failure to mitigate damages." Are you aware of any facts that relate to this defense?
>
> A. I'm not.

Dkt. 107-4 at 5–6. Considering that both men were testifying on behalf of Bragg, ExxonMobil insists that Ebel and Roy's complete failure to respond to questions about the very claims and defenses in this lawsuit should result in an order precluding Bragg "from offering testimony at trial on [Bragg's] affirmative defenses or the alleged factual bases therefore." Dkt. 107 at 7.

In retort, Bragg claims that Roy and Ebel provided "multiple facts supporting the affirmative defenses" and that they lacked the legal training necessary to discuss affirmative defenses and legal elements of claims. Dkt. 126 at 3. Bragg maintains it "made a good faith effort to designate persons having knowledge of the matters sought." *Id.* at 4.

To begin, let me simply say that I think Bragg's argument is, at best, flimsy. The questions posed by ExxonMobil's counsel did not ask for any legal opinions or conclusions. All ExxonMobil's counsel sought was the factual bases for Bragg's affirmative defenses, a topic for which ExxonMobil was certainly entitled to explore. I was appalled to learn that neither Ebel nor Roy were even aware that they had been designated as a corporate representative on specific topics. As the entity designating a Rule 30(b)(6) witness, Bragg was required to "prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth.*, 469 F.3d at 433. That clearly was not done here.

Although this is a close call, I am ultimately unwilling to issue sanctions under Rule 37 precluding Bragg from offering any testimony at trial on the affirmative defenses set forth in its answer. Typically, "[p]reclusion of evidence and/or defenses . . . are *drastic* remedies generally confined to exceptional cases where a party's failure to provide requested discovery results in prejudice to the

5

requesting party." *Better Bags, Inc. v. Ill. Tool Works, Inc.*, 939 F. Supp. 2d 737, 753 (S.D. Tex. 2013) (emphasis added). Notably, ExxonMobil does not claim that it fails to understand the bases for Bragg's affirmative defenses or that it is unprepared for trial. Make no mistake: I do not condone Bragg's neglect. At the same time, I am not convinced that ExxonMobil has been prejudiced by Bragg's improper behavior.

I am also mindful that ExxonMobil could have easily taken steps to cure any alleged prejudice. For example, ExxonMobil could have complained to the Court months ago about Bragg's failure to present prepared corporate representatives for the Rule 30(b)(6) depositions. Given my prompt response to other discovery disputes in this case, there is no question that such a complaint would have been met with a quick oral hearing to address the issue head on. Instead, ExxonMobil filed this motion more than six months after Ebel and Roy's depositions and only a couple weeks before trial.

For these reasons, Plaintiffs' Motion to Exclude Testimony on Defendants' Affirmative Defenses is **DENIED**. At the same time, it is clearly unfair for Bragg to face no adverse consequences in light of its unacceptable discovery behavior. Fairness dictates that Ebel and Roy, if called to testify at trial, be precluded from testifying to matters about which they claimed no knowledge when they were deposed by ExxonMobil.

**B.     PLAINTIFFS' MOTION IN LIMINE AND MOTION TO EXCLUDE MATTERS RELATING TO COMPARATIVE FAULT**

ExxonMobil asks that I exclude from trial all evidence related to "comparative fault, contributory negligence, or responsible third parties." Dkt. 110 at 1. ExxonMobil argues that "comparative fault is not relevant in a breach of contract case" and that "contributory negligence is not relevant and has not been pleaded by [Bragg]." *Id.* at 2, 3. In response, Bragg admits that it does not "allege proportionate responsibility" or "seek to designate a responsible third party in this action." Dkt. 128 at 1. Noting that "[t]he causal element of a breach of contract

6

claim requires the plaintiffs to establish their injury was a foreseeable and directly traceable consequence of defendants' breach," Bragg argues that it is entitled to introduce testimony and evidence at trial to show that ExxonMobil's "losses were a consequence traceable to someone other than" Bragg. *Id.* at 2.

Based on my reading of the parties' submissions, it appears that, at this stage of the proceedings, both parties generally agree that issues of comparative fault, contributory negligence, and responsible third parties are inapplicable or untimely. I will thus **GRANT** ExxonMobil's motion in limine and prohibit Bragg from adducing any testimony, argument, or reference relating to comparative fault, contributory negligence, or responsible third parties. To be clear, Bragg may certainly present admissible evidence to show that factors other than the crane collapse contributed to cause ExxonMobil's alleged damages. That seems to be a genuine concern of Bragg and nothing in my ruling is intended to hamstring Bragg in that respect.

**C.     PLAINTIFFS' MOTION FOR RULING ON ADMISSIBILITY OF INSURANCE AT TRIAL**

ExxonMobil requests the opportunity to present evidence at trial concerning the amount of Bragg's insurance coverage. At first blush, this request seems to run counter to Federal Rule of Evidence 411, which provides, in part, that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." FED. R. EVID. 411. But, a "court may admit . . . evidence [that a person was or was not insured against liability] for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." *Id.*

ExxonMobil argues that it does not seek to present evidence concerning the amount of the Bragg's insurance to show that Bragg "acted negligently or otherwise wrongfully." *Id.* Instead, ExxonMobil insists that "Section 11(c) of the Standard Procurement Agreement . . . at issue imposes upon Bragg the duty to compensate ExxonMobil for damages to ExxonMobil's property in an amount not to exceed the

7

limit of Bragg's insurance coverage." Dkt. 118 at 2. This contractual requirement, ExxonMobil contends, makes evidence concerning the existence and amount of Bragg's insurance coverage relevant to establishing ExxonMobil's breach of contract claim.

"[I]f offered for an impermissible purpose, [evidence of insurance] must be excluded, and if offered for a purpose not barred by the Rule, its admissibility remains governed by the general principles of [other Federal Rules of Evidence]." FED. R. EVID. 411 advisory committee's note to 2011 amendments. All evidence offered at trial must be relevant. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Even if evidence is relevant, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Even if I assume that ExxonMobil seeks to offer evidence of insurance for a purpose other than to show that Bragg "acted negligently or otherwise wrongfully," FED. R. EVID. 411, I am concerned that the introduction of such evidence in this case would be unfairly prejudicial to Bragg. As a general rule, courts are reluctant to allow the mention of insurance before the jury. Injecting insurance into a case increases the risk that a jury will return a verdict against an insured party, notwithstanding the strength or weakness of the liability evidence, on the belief that the insured party will not have to pay a judgment from his own pocket. *See City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 758 (6th Cir. 1980) ("Knowledge of defendant's insurance has traditionally been treated as fruit of the forbidden tree."). That concern certainly exists in this case. Bragg carries insurance limits well above $25 million—substantially more than the amount of damages ExxonMobil is requesting in this lawsuit. As a result, I fail to understand how the introduction of evidence relating to the amount of Bragg's insurance coverage

8

advances the ball.³ Allowing such evidence will only serve to unfairly prejudice Bragg. As a result, ExxonMobil's motion is **DENIED**, and evidence concerning the existence or amount of Bragg's insurance coverage will not be allowed at trial.

**D.    PLAINTIFFS' MOTIONS [SIC] IN LIMINE ON THE 2015 ESP EXPLOSION**

In this motion, ExxonMobil asks that I exclude "any testimony, argument, or reference to the explosion of the [Electrostatic Precipitator] unit at the Torrance Refinery on February 18, 2015." Dkt. 127 at 1. Such testimony, ExxonMobil contends, "would be inadmissible, irrelevant, and prejudicial to [ExxonMobil's] right to a fair and impartial trial." *Id.* at 3. In my recent opinion addressing efforts to exclude certain expert witness testimony, I discussed whether Bragg's expert Jesse Frederick ("Frederick") should be allowed to offer testimony about the 2015 explosion at the Torrance refinery. That discussion applies with equal force here:

> In 2015, roughly 15 months before the crane accident giving rise to this lawsuit, an explosion occurred at the Torrance refinery in a pollution control device called the Electrostatic Precipitator ("ESP"). At trial, Frederick apparently wants to suggest that the ESP explosion, not the crane accident, is the cause of some of the damage to the boilers that ExxonMobil seeks to recoup in this matter. ExxonMobil argues that Frederick's opinions about this ESP explosion are "irrelevant, unsupported, and overly prejudicial." Dkt. 99 at 4. I agree with ExxonMobil. The record is notably lacking *any* evidence that remotely suggests that the ESP explosion caused damage to the refinery for which ExxonMobil seeks to recover in this action. At his deposition, Frederick admitted that he "absolutely" does not know whether the ESP explosion had any impact on the equipment ExxonMobil contends was damaged as a result of the crane accident. Dkt. 99-2 at 10. He further acknowledged that he could not "say one

---

³ In a reply brief, ExxonMobil states that if Bragg enters into a stipulation that Bragg has at least $25 million in insurance coverage applicable to ExxonMobil's claims, then ExxonMobil's concerns will be alleviated. But Bragg's representation in its pleadings that its insurance coverage exceeds $25 million is "deliberate, clear, and unequivocal." *Heritage Bank v. Redcom Lab'ys, Inc.*, 250 F.3d 319, 329 (5th Cir. 2001). Such a statement thus qualifies as a judicial admission, which is forever binding on Bragg. *See Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) ("A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them."). Therefore, any such concerns ExxonMobil may have should already be alleviated.

9

way or another whether the boiler tubes were damaged by the ESP event in 2015 or the crane collapse in 2016." *Id.* at 11. As such, any testimony from Frederick concerning the ESP explosion is irrelevant and unreliable expert testimony, which I am required to exclude as part of my gatekeeper function. Frederick may not testify about the ESP explosion.

*ExxonMobil Global Servs. Co. v. Bragg Crane Serv.*, No. 4:21-CV-03008, 2023 WL 6213438, at *3 (S.D. Tex. Sept. 25, 2023) (quotation omitted).

In response, Bragg argues that "[t]he ESP explosion proves relevant as a contributing factor for plaintiffs' alleged equipment repairs, as a contributing factor for the alleged lost net profits, and as a factor in the existence of the demolition contract." Dkt. 154 at 1. The problem with Bragg's argument is that these naked assertions lack any evidentiary support. "An expert must bridge the analytic gap with more than bald assertions or his own ipse dixit." *Bell v. Boeing Co.*, No. 20-CV-01716, 2022 WL 1206728, at *8 (W.D. Wash. Apr. 22, 2022). Frederick cannot credibly offer the opinion that the ESP explosion was a contributing factor to ExxonMobil's damages at trial because he stated under oath at his deposition that he possesses "absolutely" no evidence that the boiler (on which Bragg's crane fell) may have been damaged as part of the ESP explosion:

> Q. But sitting here today, you don't know one way or another, prior to the June 20, 2016, crane, whether those boilers had been affected at all by the ESP?
>
> A. I will say absolutely, no, I do not know.
>
> \* \* \*
>
> Q. Okay. So let me -- let me break that down so I -- so we're on the same page. Sitting here today as an expert in this case, you can't say one way or another whether the boiler --
>
> A. Repairs?
>
> Q. -- tubes were damaged by the ESP event in 2015 or the crane collapse in 2016?
>
> A. Correct.

Dkt. 99-2 at 10–11.

10

Accordingly, I **GRANT** ExxonMobil's motion in limine and order that the parties, as well as their witnesses and attorneys, are prohibited from testifying, mentioning, or referencing the February 2015 ESP explosion.

E.     **PLAINTIFFS' MOTIONS [SIC] IN LIMINE ON ANY TESTIMONY FROM BHL OR DEFENDANTS FROM THE CAL OSHA PROCEEDINGS**

In 2018, the California Occupational Safety and Health Appeals Board ("CAL OSHA") held an evidentiary hearing and issued an opinion addressing the validity of two citations the California Division of Occupational Safety and Health issued against Bragg as a result of the June 2016 crane incident.

ExxonMobil requests that I exclude any testimony from the CAL OSHA proceedings, arguing that "[s]uch testimony would be inadmissible [as hearsay under Rule 802], irrelevant, and prejudicial to [ExxonMobil's] right to a fair and impartial trial." Dkt. 134 at 2. Bragg argues that Rule 803(8), the public records exception to the hearsay rule, allows me to admit hearing testimony from the CAL OSHA proceedings.

Rule 803(8) states that the following is not excluded by the rule against hearsay:

> Public records. A record or statement of a public office if:
> (A) it sets out:
>     (i) the office's activities;
>     (ii) a matter observed while under a legal duty to report . . .; or
>     (iii) in a civil case . . ., factual findings from a legally authorized investigation; and
> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

FED. R. EVID. 803(8).

On its face, this rule does not apply to testimony adduced at an administrative or agency hearing. Rule 803(8) is expressly limited to a "record or statement of a public office," and does not extend to hearing transcripts. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1146 (E.D. Pa. 1980) ("[T]ranscripts of agency hearings are not admissible under 803(8)(C), but are

11

tested instead under the provisions of Rule 804(b)(1) (Former Testimony)."); *Complaint of Am. Export Lines, Inc.*, 73 F.R.D. 454, 459–60 (S.D.N.Y. 1977) (holding that agency hearing transcripts fall within the scope of Rule 804(b)(1), not Rule 803(8)). The Fifth Circuit has endorsed this view. *See Moss v. Ole S. Real Est., Inc.*, 933 F.2d 1300, 1310 (5th Cir. 1991) ("Rule 803(8)(C) by its terms allows only the introduction of the report setting forth factual findings; there is no provision for requiring the admission of an entire investigatory file. On remand, the trial court need only admit the factual findings, including opinions and conclusions, of the Air Force report. . . . It should not admit any portion of the investigatory file which contains otherwise inadmissible evidence.").

Rule 804(b)(1) creates a hearsay exception for prior testimony when a witness is unavailable to offer live testimony at trial. The prior testimony must have been given "at a trial, hearing, or lawful deposition" and the party against whom the testimony is offered must have had "an opportunity and similar motive to develop [the testimony] by direct, cross-, or redirect examination." FED. R. EVID. 804(b)(1). This exception is not applicable to the instant situation because (1) Bragg has made no showing that any witnesses from the CAL OSHA proceedings are unavailable to testify at trial; and (2) ExxonMobil was not a party to the CAL OSHA proceedings and therefore could not develop the testimony. As a result, I **GRANT** ExxonMobil's motion in limine relating to the CAL OSHA proceedings. I will not allow any transcripts from the CAL OSHA proceedings into evidence in this case, as they are hearsay statements.

On a related note, there is much discussion in the briefing as to whether CAL OSHA's factual findings are covered by Rule 803(8)'s public records hearsay exception. I need not, however, make that decision now. I will address that issue when such evidence is introduced at trial.

## CONCLUSION

In summary, I issue the following rulings:

- Plaintiffs' Motion to Exclude Testimony on Defendants' Affirmative Defenses is **DENIED**. I further order that that Ebel and Roy, if called to testify at trial, be precluded from testifying to matters about which they claimed no knowledge when they were deposed by ExxonMobil.

- Plaintiffs' Motion in Limine and Motion to Exclude Matters Relating to Comparative Fault is **GRANTED**. I prohibit the parties from adducing any testimony, argument, or reference relating to comparative fault, contributory negligence, or responsible third parties.

- Plaintiffs' Motion for Ruling on Admissibility of Insurance at Trial is **DENIED**. Evidence concerning the existence or amount of Bragg's insurance coverage will not be allowed at trial.

- Plaintiffs' Motions [sic] in Limine on the 2015 ESP Explosion is **GRANTED**. I order that the parties, as well as their witnesses and attorneys, are prohibited from testifying, mentioning or referencing the February 2015 ESP explosion.

- Plaintiffs' Motions [sic] in Limine on Any Testimony from BHL or Defendants from the CAL OSHA Proceedings is **GRANTED**. I will not allow any transcripts from the CAL OSHA proceedings into evidence in this case, as they are hearsay statements.

SIGNED this 26th day of September 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE